UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 90-3706

_____

LYNN MARTIN, Secretary of Labor,

                    Plaintiff-Appellant,


versus


LESLIE N. BEDELL and BLUE WATER MARINE,
CATERING, INC.,

                    Defendants-Appellees.

_____


Appeal from the United States District Court
for the Eastern District of Louisiana
_____

(March 25, 1992)

BEFORE WISDOM, HIGGINBOTHAM, and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

        This case presents the question whether the cooks employed

by the defendant/appellee, a caterer to boats providing offshore

support to oil companies in the Gulf of Mexico, are entitled to

overtime pay under the Fair Labor Standards Act (FLSA).  Because

the income generated by those cooks must be attributed to their

employer, the employer is bound to comply with the Act's overtime

provisions.  Because the district court's factual findings are

insufficient to support its determination that the cooks do not

fit within the narrow definition of "seaman" under the FLSA, we remand for further, limited factual findings. We therefore REVERSE the decision below as to the employer's exemption from enterprise coverage, and REMAND as to the cook's status as nonseaman, so that the district court may make necessary findings as to the work the cooks perform.

## I. BACKGROUND

Blue Water Marine Catering, Inc. ("Blue Water") supplies cooks for "jack-up boats". Those boats provide offshore maintenance services for oil companies. Both parties concede that the oil and gas produced by those companies enter the stream of interstate commerce.

For the dates pertinent to this appeal, Blue Water paid its cooks a day rate. The Department of Labor, through its Wage and Hour Division, investigated Blue Water and determined that this form of payment violated the FLSA. The Secretary of the Department of Labor, Elizabeth Dole (now Lynn Martin), brought this suit to force Blue Water and its president, Leslie N. Bedell, to comply with the overtime provisions of the FLSA. Accordingly, we shall refer to the plaintiff/appellant as "Labor".

The district court held a one-day bench trial limited to Blue Water's liability. The court decided that neither the cooks as individuals nor Blue Water as an enterprise was covered by the FLSA. As to the cooks, it held that their work outside of Louisiana's territorial waters was outside the jurisdiction of

the FLSA.  When the cooks did work within those waters, the court held that the food they cooked (food that was consumed aboard) was not "goods for commerce"; therefore, their services were not closely related to or directly essential to the production of goods for commerce, and were not covered by the Act.  The court also held that Blue Water itself was excused from compliance because it fitted within the Act's exception for business establishments employing only immediate members of one family. Finally, the court held that the cooks, although they worked on seagoing vessels, did not fit within the FLSA's narrowly construed exemption of seamen.  Labor appeals all but this last holding, which Blue Water challenges.

## II. THE STATUTORY FRAMEWORK

The FLSA guarantees overtime pay to employees engaged "in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage").[1] Either individual or enterprise coverage is enough to invoke FLSA protection.[2]

---

[1] 29 U.S.C. § 207(a)(1) reads:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

[2] Our finding that Blue Water is subject to enterprise coverage therefore values it unnecessary to consider the district

Many exceptions temper the strictness of this rule. Relevant to the issue of enterprise coverage in this case is the "mom and pop" exception. The FLSA defines "enterprise engaged in commerce or in the production of goods for commerce" to exclude "any establishment which has as its only regular employees" members of one immediate family.[3] The sales of such an establishment are not included in determining the minimum amount of revenues that triggers the Act's application.[4] Labor's interpretive bulletins define an "establishment" to be a "distinct physical place of business".[5] The only employees who work at the home office establishment of Blue Water are Mr. Bedell, his wife, and her daughter. Without other "regular employees" their office in Gretna, Louisiana would be excluded from the Act as a "mom and pop" establishment.

There are also relevant exemptions from individual coverage. For example, an employer need not comply with the Act's overtime

_____

court's decision on individual coverage.

[3] 29 U.S.C. § 203(s)(2) provides:
Any establishment that has as its only regular employees the owner thereof or the parent, spouse, child or other member of the immediate family of such owner shall not be considered to be an enterprise engaged in commerce or in the production of goods for commerce or a part of such an enterprise. The sales of such an establishment shall not be included for the purposes of determining the annual gross volume of sales of any enterprise for the purposes of this subsection.

[4] Id.

[5] 29 C.F.R. § 779.23 (1990).

requirements if its employees are exempt under 29 U.S.C. § 213(b).  One of those exemptions, § 213(b)(6), is for "any employee employed as a seaman".

III. ENTERPRISE COVERAGE AND THE "MOM AND POP" EXCLUSION

Applying the words "employer", "establishment", and "enterprise" under the FLSA can be confusing.  Labor's own interpretations bravely attempt to define them.[6]  In general, "employer" is usually a person; "establishment" is a place of business; and "enterprise" is the business itself, a number of related activities done for a common business purpose.

---

[6]  29 C.F.R. § 779.203 (1990) provides:
The coverage, exemption and other provisions of the Act depend, in part, on the scope of the terms "employer," "establishment," or "enterprise."  As explained more fully in Part 776 of this chapter, these terms are not synonymous.  The term "employer" has been defined in the Act since its inception and has a well established meaning.  As defined in section 3(d), it includes, with certain stated exceptions, any person acting directly or indirectly in the interest of an employer in relation to an employee.  (See § 779.19.)  The term "establishment" means a "distinct physical place of business" rather than "an entire business or enterprise."  (See § 779.23)  The term "enterprise" was not used in the Act prior to the 1961 amendments, but the careful definition and the legislative history of the 1961 and 1966 amendments provide guidance as to its meaning and application.  As defined in the Act, the term "enterprise" is roughly descriptive of a business rather than of an establishment or of an employer although on occasion the three may coincide.  The enterprise may consist of a single establishment (see § 779.204(a)) which may be operated by one or more employers; or it may be composed of a number of establishments which may be operated by one or more employers (see § 779.204(b)).

For the times relevant to this case, no enterprise was subject to the FLSA unless its annual gross sales volume exceeded $250,000.[7] As we noted above, the Act excludes sales figures for a "mom and pop" establishment that regularly employs only immediate family members. The district court found that Blue Water's home office in Gretna, Louisiana was such an establishment: its sales figures, all generated from that establishment, would not count toward a finding of enterprise coverage. The court found that the jack-up boats on which the cooks are employed are separate establishments under the Act, but that the sales volume generated by the cooks' work in those establishments were attributable to Blue Water's home office. For that reason, those sales (which the court found to be greater than $250,000) do not count toward enterprise coverage. In so ruling, the court weaved two errors together. Unravelling them reveals two separate holdings by which the district court might have found, and by which we find as a matter of law, that Blue Water is subject to enterprise coverage under the FLSA.

The court erred first in the legal finding that, "while the cooks and galley hands are employees of Blue Water's enterprise, they are not employees of the Heritage Avenue [Bedell home office] establishment". The court found that "[n]one of the other regular employees of Blue Water ever set foot inside this establishment"; "the only regular employees of that

_____

[7] 29 U.S.C.A. § 203(s)(1) (1978). In 1989 that figure was raised to $500,000. 29 U.S.C.A. § 203(s)(1)(A)(ii)(Supp. 1991).

establishment" are the three Bedell family members.  It is not necessary, however, for cooks or for others ever to set foot in Blue Water's Gretna establishment to be its employees.  It was error to deny that they _might_ be employees of Blue Water's Gretna establishment.

The district court assumed that no one could be a "regular employee" of an establishment at which he never appears.  Although the Act itself offers little guidance on this issue, we disagree.  The question whether someone is the regular employee of an establishment is not answered, or not answered solely, by looking to whether he works _at_ the establishment.[8]  It is

_____

[8]  Labor's interpretive bulletins state that employees of an exempt retail or service establishment can also be exempt even if they do not work _at_ the establishment.  29 C.F.R. § 779.307 reads in pertinent part that

> such employees as collectors, repair and service
> men, outside salesmen, merchandise buyers,
> consumer survey and promotion workers, and
> delivery men actually employed by an exempt retail
> or service establishment are exempt from the
> minimum wage and overtime provisions of the Act
> although they may perform the work of the
> establishment away from the premises.

The bulletins also state that employees of a non-exempt establishment cannot become exempt simply by visiting exempt establishments on behalf of their employers.  29 C.F.R. § 779.310 provides that

> traveling auditors, manufacturers' demonstrators,
> display-window arrangers, sales instructors, etc.,
> who are not "employed by" an exempt establishment
> in which they work will not be exempt merely
> because they happen to be working in such an
> exempt establishment, whether or not they work for
> the same employer.  Mitchell v. Kroger Co., 248
> F.2d 935 (8th Cir. 1957).

The mere location of employment is therefore not conclusive.  A court should look to the economic reality, and not the location, of employment to determine who employs an employee.

answered according to economic reality, applied through factors with which this and other courts have attempted a legal definition of "employee".[9]  Blue Water has never contended that its cooks are actually the employees of any other employer. Because they could be employees of the Blue Water enterprise without being employees of the Bedell establishment, however, we cannot say that they are employees of Blue Water's home office.[10]

_____

[9]  See, e.g., Watson v. Graves, 909 F.2d 1549, 1553 (5th Cir. 1990)(citations omitted):

> For purposes of FLSA, determination of employee status focuses on economic reality and economic dependence.  The "economic reality" test includes inquiries into:
>> whether the alleged employer (1) has the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

[10]  Based on the facts before us, we find it unlikely that the technical, and for obvious reasons necessary, control exerted over Blue Water's cooks by the masters of the jack-up boats would be sufficient to destroy the economic reality of their employment by Blue Water.  Yet even if it were the case that the cooks are employed by the jack-up boat owners as well as by Blue Water, we note that under the FLSA an individual can be employed by one employer or by more than one joint employer.  Falk v. Brennan, 414 U.S. 190, 195 (1973); Donovan v. Sabine Irrigation Co., Inc., 695 F.2d 190, 194 (5th Cir. 1983); Hodgson v. Griffin and Brand of McAllen, Inc., 471 F.2d 235 (5th Cir.), cert. denied, 414 U.S. 819 (1973).  29 C.F.R. § 791.2 (1991) provides:

> (a)  A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer.  A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. . . . [I]f

The Blue Water enterprise, however, is not exempt from FLSA coverage merely because the Bedell home office might be a statutory "mom and pop" establishment. The trial court's second error was its unsupported holding that, because the cooks are not employed at Blue Water's one establishment, then the revenues generated by their work in the jack-up boats must be attributed to that home office establishment. The court found, inconsistently, that Blue Water's only establishment is its home office, yet it also found that the cooks are employed at each jack-up boat. We find that if the cooks are not employed at the Bedell home office establishment, then the jack-up boats must constitute distinct establishments in the Blue Water enterprise.

It would be inconsistent with the remedial purposes of the FLSA to attribute the income generated by the work of the cooks on jack-up boats to the Bedell home and not to those establishments and the larger Blue Water enterprise. Otherwise, any business controlled by immediate family members could exclude its employees from FLSA coverage by segregating them, even though their labors were the employer's only source of income, from the home office. We read the "mom and pop" exclusion to exclude from

the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act.

coverage only "Mom", "Pop", their immediate relatives, and the revenues their work generates.  An enterprise that otherwise meets the prerequisites of FLSA coverage (i.e., has gross annual sales greater than the statutory minimum) cannot avoid that coverage by employing only immediate family members at its home base, when a large pool of non-family employees generate the bulk of its income.  In declaring that Blue Water's cooks worked at as many establishments as there are jack-up boats, the district court then erred by attributing the income earned by working on those establishments not to the Blue Water enterprise but to the one establishment in Gretna.

The appellee cannot have it both ways.  Either Blue Water has one establishment that regularly employs a large number of unrelated employees, or it is an enterprise with many establishments; one of those establishments is exempt, but the income generated by work performed at its many other establishments should be attributed to the entire enterprise, and therefore count toward the dollar volume requirements of the FLSA.  It is irrelevant which of these scenarios is true. Because the factual resolution of these issues would have no effect on the outcome, and because it is established that the revenues generated by the cooks' work are greater than the statutory minimum for enterprise coverage, we hold that Blue Water is subject to enterprise coverage as a matter of law.

## IV. THE SEAMAN EXEMPTION

This Court has long been accustomed to a very broad

definition of the word "seaman" for purposes of the Jones Act. This case reminds us, however, that the definition of seaman under the Jones Act is limited to that Act and its remedial goals.[11] In contrast, the remedial goals of the Fair Labor Standards Act lead us to read narrowly its exemptions, including the definition of "seaman".[12] A "seaman" is removed entirely from the Act's overtime provisions. An employer has the burden of proving that its employees stand outside of this Act's very broad protection.[13]

Because employment solely on seagoing vessels does not necessarily make one a "seaman" under the FLSA, a court must look to the actual work performed. Our review of a district court's investigation of this question is limited to its findings of fact, which we accept unless they are clearly erroneous.[14] We review de novo the application of those facts to the law.[15]

In this case the district court found that Blue Water's cooks perform work essential to the operation of seagoing vessels traveling between Louisiana and the outer Continental Shelf. It

---

[11] This Court has already decided that a seaman under the Jones Act is not a seaman under the FLSA. Dole v. Petroleum Treaters, Inc., 876 F.2d 518 (5th Cir. 1989).

[12] Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960).

[13] Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206 (1966).

[14] Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).

[15] Id.

also found that, "[w]hile aboard the vessel, the cooks are subject to the authority, direction, and control of the master of the vessel".  Yet from these facts the district court found that the cooks are <u>not</u> seaman because their services are not "rendered primarily as an aid in the operation of a vessel as a means of transportation".[16]

This Court has decided two cases involving the "seaman" exemption.[17]  Although neither case offers us much help here, our more recent case directs us to the interpretive bulletins of the Wage and Hour Division of the Department of Labor, which, in turn, rely heavily on our earlier case; those bulletins also provide an answer in this case.  We give great weight to the consistent interpretations of those bulletins.[18]  They allow the holding that in some cases a seagoing cook may not be a seaman.

The regulations state that a "seaman" is an employee who "performs, as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of [a] vessel as a means of

_____

[16]  Quoting 29 C.F.R. § 783.31; <u>Petroleum Treaters</u>, 876 F.2d at 521.

[17]  <u>Petroleum Treaters</u>, 876 F.2d 518; <u>Walling v. W. D. Haden Co.</u>, 153 F.2d 196 (5th Cir.), <u>cert. denied</u>, 328 U.S. 866 (1946).

[18]  <u>Tony & Susan Alamo Found. v. Secretary of Labor</u>, 471 U.S. 290, 297 (1985); <u>Petroleum Treaters</u>, 876 F.2d at 521-22) ("The fact that the interpretation has not varied since the FLSA's enactment also entitles it to 'great respect'.  <u>Chemehuevi Tribe of Indians v. Federal Power Comm'n</u>, 420 U.S. 395 (1975).")

transportation".[19]  They also state that "[w]hether an employee
is 'employed as a seaman', within the meaning of the Act, depends
upon the character of the work he actually performs and not on
what it is called or the place where it is performed".[20]  When a
worker performs both seaman's work and nonseaman's work, he is a
seaman unless his nonseaman's work is substantial in amount.[21]
Labor defines "substantial" as work that "occupies more than 20
percent of the time worked by the employee during the
workweek".[22]

The regulations also provide:

> The term "seaman" includes members of the
> crew such as sailors, engineers, radio operators,
> foremen, pursers, surgeons, cooks, and stewards
> if, as is the usual case, their service is of the
> type described in § 783.31.  In some cases it may
> not be of that type, in which even the special
> provisions relating to seaman will not be
> applicable.[23]

A cook is usually a seaman because he usually cooks for
seamen.  In this case that commonplace may well be untrue.  It
would appear that Blue Water's cooks primarily feed workers who
are not involved in the navigation of the boat on which they live
and from which they work.[24]  Even though the district court was

---

[19]  29 C.F.R. § 783.31 (1991), citing (among other cases)
Walling v. W.D. Haden Co.

[20]  29 C.F.R. § 783.33 (1991), again citing W.D. Haden Co.

[21]  29 C.F.R. § 783.37 (1991).
[22]  Id.
[23]  29 C.F.R. § 783.32 (1990) (emphasis added).

[24]  For example, in W.D. Haden, 153 F.2d at 199, we
emphasized that the Act does not exempt seaman, but those
"employed as seaman", a distinction we found more than

correct to look to whether the cooks' services do in fact aid the operation of vessels as means of transportation, it did not state its findings in terms sufficient to satisfy the standards of Labor's interpretive bulletins, to which we defer.  We remand so that the district court may determine if the cooks spend more than 20% of their time preparing food for non-crew members.  If they do, they are not seamen under the FLSA.

VI. CONCLUSION

For the reasons stated above, we REVERSE in part, and REMAND to the district court for the limited factual findings made necessary by this opinion.

---

tautological.  We found that shell miners employed on a seagoing vessel "are employed more in industry than in shipwork".  In this case, similarly, it seems likely that Blue Water's cooks are employed more in feeding industrial workers than in feeding ship workers.  If more than 20% of their time is spent in the former, then they are intended beneficiaries of the FLSA.  As we wrote in W.D. Haden, "[t]he entire Act is pervaded by the idea that what each employee actually does determines its application to him".  Id.